JAMES W. TYDEMAN, Respondent, *v.* PRINCE LINE, LIMITED, Appellant.

*Negligence— injury to a longshoreman engaged in loading a vessel — a condition of the hatchway common in such work gives no cause of action — nor does the manner of attaching the fall rope to the winch — it is the act of a fellow-servant.*

In an action brought to recover for personal injuries sustained by the plaintiff, an experienced longshoreman, while employed by the defendant in loading bales of paper into the hold of a vessel, it appeared that the covering of the hatchway through which the loading was done consisted of three pieces each about eighteen feet long and six feet wide; that at the time of the accident both the forward and aft sections were in place, and that the middle section was alone open; that a steam winch was used in lowering the bales of paper into the hold; that the fact that the forward section of the hatchway was in place prevented the workmen from moving the bales as far forward as was necessary for proper storage; that to meet this difficulty each bale of paper was lowered to the floor of the hold, the hooks were detached and the tackle was carried around a stanchion and again fastened to the bale, when, by starting the winch, the bale was brought forward to the position desired; that while the latter operation was being conducted a bale was brought forward and whipped around the stanchion, throwing it back into practically the same position as when it started, and causing the plaintiff to be knocked down and to receive the injuries for which he sought to recover.

The charges of negligence preferred against the defendant were, *first*, that it allowed the forward section of the hatchway to remain in place, thus compelling resort to the expedient of placing tackle around the stanchion; and, *second*, that the fall rope was fastened to the drumhead of the winch instead of to the barrel or main drum of the winch.

*Held*, that, as the method adopted in doing the work was a common method of procedure, and as the plaintiff was familiar with the work and knew what was being done, he was not in a position to complain because the forward section of the hatchway covering was not removed;

That the defendant was not obliged to personally see to it that the fall rope was properly fastened to the winch;

That it performed its full duty when it had provided a reasonably safe place for the plaintiff to work, and when it had supplied the plaintiff and his fellow-servants with reasonably safe tools and appliances for the performance of such labor, and had provided an adequate number of competent men to perform the work;

That, in any event, the accident resulted from the negligence of fellow-servants, and that, as such fellow-servants were not shown to have been incompetent, the plaintiff was not entitled to recover.

APPEAL by the defendant, the Prince Line, Limited, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Kings on the 5th day of February, 1904, upon the verdict of a jury for $5,000, and also from an order entered in said clerk's office on the 15th day of February, 1904, denying the defendant's motion for a new trial made upon the minutes.

*H. Snowden Marshall* [*Frederick E. Fishel* with him on the brief], for the appellant.

*Albert A. Wray* [*Charles D. O'Connell* with him on the brief], for the respondent.

WOODWARD, J.:

The plaintiff with an experience of four years, was engaged as a longshoreman by the defendant in loading bales of paper in the hold of the vessel, the *Sailor Prince*, on the 4th day of February, 1902. It appears from the evidence that the plaintiff constituted one of a gang of four men, who, in company with a gang of an equal number, were engaged in stowing away a cargo at hatch No. 1 of the ship. The cargo appears to have been well in, so that one-third of the hatchway was full. The covering of this hatchway consisted of three pieces each about eighteen feet long and six feet wide, and the after third of this hatch covering was down over the cargo which was already in place. The middle section was open and the last section forward was in place, one of the elements of negligence urged being that by reason of this latter third being down, the workmen were obliged to use a different method in placing the bales of paper than otherwise would have been necessary. A winch

operated by steam stood near this hatchway, and the rope known as the "fall" was rigged to pass through a pulley block attached to an arm extending from one of the masts of the ship. The bales of paper weighed from six to eight hundred pounds and were attached to the fall by means of a sling, which was fastened around the bale of paper and hooked on the fall. When the bale was lowered into the hold of the vessel the men composing the gang of which plaintiff was a member shoved the draft forward toward the bow of the vessel, and it is claimed and admitted that, because of the forward portion of the hatch covering being down, they were prevented from moving the bale as far forward as was necessary to properly stow it away. To meet this difficulty the bale was lowered to the floor of the hold, the hooks were detached, and the fall was carried around a stanchion and again fastened to the bale, when by starting the winch the bale was drawn forward into the position desired. This was shown without dispute to be a common method of procedure, and we are of opinion that, as the plaintiff was familiar with the work, and knew what was being done, he is in no position to complain because the forward section of the hatch covering was not removed.

The only other foundation for the alleged negligence of the master is found in the contention of the plaintiff that the winch used was not properly prepared for the work which was under way. It appears that when the bale of paper which caused the injury was lowered into the hold and pushed as far forward as possible, the plaintiff unfastened the fall and carried it around the stanchion as suggested above, and that the winch was started, drawing the bale forward and whipping it around the stanchion, throwing it back into practically the position from which it started, and that the plaintiff, who was in the rear of the draft, was knocked down and against the portion of the cargo already in place, sustaining injuries, the extent of which is not questioned. There is no suggestion that the winch was not a proper machine, or that it was not in perfect condition; there is no effort to show that the rope used was not exactly what should have been used for this purpose, and there is no allegation that the defendant had failed in its duty to employ competent fellow-servants, but the testimony was directed to an effort to show that the fall rope was not properly attached to the winch. One of

the plaintiff's witnesses, who was at work in the hold with the plaintiff at the time of the accident, testified that he came on deck within a few seconds of the accident, and that at that time the fall rope was wound around the drumhead of the winch. Several of the plaintiff's witnesses testified as to this method of operation, and that it was not as safe as when the rope was fastened to the barrel or main drum of the winch. From this testimony it might be gathered that the winch has a large barrel or drum in the center, with smaller drums at the end, and that when the smaller drums are used it is customary to wrap the fall rope two or three times around the drum and to operate the same by one man holding the end of the rope and slacking the same off as the draft is ready to be lowered and drawing the rope tight, so that the drum will wind it around when the fall is let loose, bringing it back up from the hold. The other method is to fasten the rope to the main drum or barrel, operating it wholly by steam, the rope winding and unwinding according to the motion given to the cylinder by the winchman, by turning on and off the steam. If it were important to determine which of these methods was actually in use on the day of the accident, we are of opinion that the weight of the evidence is against the apparent finding of the jury. But in the view we take of the question, this is not important; the master had performed its duty when it had provided a reasonably safe place for the plaintiff to work, and when it had supplied the plaintiff and his fellow-servants with reasonably safe tools and appliances for the performance of such labor, and had provided an adequate number of competent men to perform the work, With the exception of the contention in reference to the hatchway, already discussed, there is no complaint in respect to any of these matters. There is no evidence that the defendant's general foreman directed the use of the winch in the manner which the plaintiff seeks to establish ; the foreman distinctly testifies that he gave no such order, and that the winch was not so fitted for the performance of this work, so that there can be no reason for holding that he assumed to act in a matter which did not belong to the master, and it will hardly be recognized as the law of this jurisdiction that it was the duty of the master in this case personally to see to it that a perfect piece of machinery, in the control of competent employees, was not operated in an improper manner. If the

work of putting in the cargo had been by horse power, and the defendant had furnished a proper horse and a proper harness, and had employed a competent man to drive the horse, and the same accident had occurred, would any one think of charging the master with negligence because the horse might not have been properly harnessed or properly attached to the lifting rope? If not, why is the master held liable here? There is no difference in principle; the matter of attaching the rope and operating the winch was one of detail which the master could delegate to competent servants, and whether the plaintiff's fellow-servants performed the duty right or wrong has no bearing on the question of the defendant's liability. The accident happened because the winchman started up the machine and permitted it to run too far. The testimony indicated that it was dangerous to use the winch with the loose rope around the drum head in lowering cargo — that the rope was likely to slip — but the undisputed evidence in this case is that the accident occurred when the winch was set in motion to raise the bale of paper and to move it forward in the ship, and there was no evidence to show that the rope did slip, or that the winch ran away from the control of the winchman, or that the accident was due to any other fact than that the winch was started and ran forward, winding up the rope just as it was intended to do, and that the winchman, for some unexplained reason, failed to stop the same as soon as it was necessary in order to prevent the accident. In any event the accident resulted from the negligence of fellow-servants, who are not shown to have been incompetent, and the plaintiff cannot recover in this action. The principle announced in *Hogan* v. *Smith* (125 N. Y. 774, 775) seems to us to be controlling here. (See *Kimmer* v. *Weber*, 151 N. Y. 417, 422, 423, and authorities there cited.)

The judgment and order appealed from should be reversed.

HIRSCHBERG, P. J., BARTLETT and JENKS, JJ., concurred; HOOKER, J., not voting.

Judgment and order reversed and new trial granted, costs to abide the event.